```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x     FOR PUBLICATION
In re:
                                                                      Chapter 11
        KG WINDDOWN, LLC, et al.¹,
                                                                      Case No. 20-11723 (MG)
                                        Debtors.
----------------------------------------------------------------x     (Jointly Administered)
```

## MEMORANDUM OPINION AND ORDER GRANTING DEBTORS' DISMISSAL MOTION

*A P P E A R A N C E S :*

ALSTON & BIRD LLP
*Counsel to the Debtors and Debtors-in-Possession*
90 Park Avenue
New York, NY 10016
By:   Gerard S. Catalanello, Esq.
      William Hao, Esq.

GOODWIN PROCTER LLP
*Counsel to BSP Agency, LLC,*
*Providence Debt Fund III L.P.,*
*Benefit Street Partners SMA-C L.P.,*
*Benefit Street Partners SMA LM L.P.,*
*Providence Debt Fund III Master (Non-US) Fund L.P.,*
*and Benefit Street Partners SMA C SPV L.P.*
620 Eighth Avenue
New York, NY 10018
By:   Michael H. Goldstein, Esq.
      Howard S. Steel, Esq.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if any), include: KG Winddown, LLC (8556); KG USA Winddown, LLC (1682); KG III Winddown, LLC (2613); KG LV Winddown, LLC (9805); KG Florida Winddown, LLC (9385); KG Puerto Rico Winddown, LLC (0901); KG AC Winddown, LLC (5082); KG Products Winddown, LLC (0303); KG LI Restaurant Group Winddown, LLC (1623); KG LI Winddown, LLC (1488); KG Franchise Winddown, LLC (0565); KG 60th St Holdings Winddown, LLC (9997); KG Broadway Winddown, LLC (4335); KG Hamptons Winddown, LLC (0423) and KG Payroll Winddown, LLC (0807). For the purpose of these chapter 11 cases, the service address for the Debtors is: 12 Penns Trail, Suite 125, Newton, PA 18940.

OFFICE OF THE UNITED STATES TRUSTEE
201 Varick Street, Suite 1006
New York, NY 10014
By:   Shannon Anne Scott, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Structured dismissals, while recently discussed by the Supreme Court in *Czyzewski v. Jevic Holding Corp. (In re Jevic Holding Corp.)*, 137 S. Ct. 973 (2017), remain somewhat of an open issue.  The Supreme Court in *Jevic* imposed limits on structured dismissals, but the Court left the door open where such dismissals do not violate the absolute priority rule and otherwise comply with the applicable provisions of the Bankruptcy Code.  *See* 7 COLLIER ON BANKRUPTCY ¶ 1112.09 (16th ed. 2021).  Here, the Debtors' request for structured dismissals fits neatly through that open door.  (*See* "Dismissal Motion," ECF Doc. # 480.)

The U.S. Trustee objected to the Dismissal Motion.  ("Objection," ECF Doc. # 482.)  The U.S. Trustee argues that the Dismissal Motion is (i) premature (as the Debtors do not seek immediate dismissal), (ii) unnecessary (with respect to the payment of administrative claims), and (iii) improper (as the Debtors seek a "blanket reservation" of all orders in the case).[2]

The Debtors and BSP[3] filed replies to the Objection.  ("BSP Reply," ECF Doc. # 483; "Debtors' Reply," ECF Doc. # 484.)  In addition, the Debtors filed revised proposed orders reflecting changes in response to the Objection.  ("Revised Proposed Orders," ECF Doc. # 487.)

---

[2]   The U.S. Trustee also objected that the Debtors' requested relief regarding dissolution under state law was beyond the Court's authority to grant.  The U.S. Trustee also objected to the exculpation clause included in the proposed dismissal order.  In response to the Objection, the Debtors dropped the request for either form of relief, and filed revised proposed orders removing the relevant provisions.  The Court has no reason to address the authority to grant the initially requested relief.

[3]   BSP Agency, LLC, Providence Debt Fund III L.P., Benefit Street Partners SMA-C L.P., Benefit Street Partners SMA LM L.P., Providence Debt Fund III Master (Non-US) Fund L.P., and Benefit Street Partners SMA-C

The Court heard argument on the Dismissal Motion and the Objection on June 7, 2021 (the "Hearing"). At the conclusion of the Hearing, the Court took the matter under submission.

For the reasons explained below, the Court **OVERRULES** the Objection, and **GRANTS** the Dismissal Motion.

## I. BACKGROUND

### A. The Debtors

The Debtors are listed in the following table, which includes the Debtors' former names (when the chapter 11 petitions were filed), and the Debtors' current names (reflecting the name changes required by the sale agreement):

| Old Company Name | New Company Name |
| --- | --- |
| K.G. IM, LLC | KG Winddown, LLC |
| IL Mulino USA, LLC | KG USA Winddown, LLC |
| IM LLC – III | KG III Winddown, LLC |
| IMNYLV, LLC | KG LV Winddown, LLC |
| IM NY, Florida, LLC | KG Florida Winddown, LLC |
| IM NY, Puerto Rico, LLC | KG Puerto Rico Winddown, LLC |
| IMNY AC, LLC | KG AC Winddown, LLC |
| IM Products, LLC | KG Products Winddown, LLC |
| IM Long Island Restaurant Group, LLC | KG LI Restaurant Group Winddown, LLC |
| IM Long Island, LLC | KG LI Winddown, LLC |
| IM Franchise, LLC | KG Franchise Winddown, LLC |
| IM 60th Street Holdings, LLC | KG 60th St Holdings Winddown, LLC |
| IM Broadway, LLC | KG Broadway Winddown, LLC |
| IMNY Hamptons, LLC | KG Hamptons Winddown, LLC |
| IM Payroll, LLC | KG Payroll Winddown, LLC |

(ECF Doc. # 400 ¶ 17.) Each of the Debtors (except IM Payroll, LLC) filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 28, 2020. (Dismissal Motion ¶ 9.)

---

SPV L.P. (collectively, "BSP," or the "Buyer"). BSP is the Debtors' prepetition secured lender, DIP lender, and the purchaser of substantially all of the Debtors' assets in a 363 sale.

3

IM Payroll, LLC, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 31, 2020. (*Id.*)

### B. The Sale

On December 22, 2020, the Court approved the sale of substantially all of the Debtors' assets to BSP. ("Sale Order," ECF Doc. # 392.) The sale closed on December 24, 2020. ("Notice of Closing," ECF Doc. # 396, at 2.)

The purchase price consisted of: (a) a credit bid in an amount equal to the sum of (i) $2,000,000 consisting of a portion of the outstanding liabilities under the DIP Facility as of the Closing Date; and (ii) $16,000,000 consisting of a portion of the Liabilities arising under the IL Mulino Prepetition Credit Documents; (b) a $100,000 cash payment reserved for distribution to holders of allowed general unsecured claims; (c) a payment or other satisfaction of all Cure Amounts in cash; and (d) the assumption of Assumed Liabilities under the Stalking Horse APA by the Stalking Horse Purchaser.[4] (Dismissal Motion ¶ 28.)

The Sale Order includes an exculpation of BSP for acts in connection with the sale. (Sale Order ¶ 34.) The U.S. Trustee did not object to exculpation or any other aspect of the sale.

### C. The Transition Services Agreements

The sale transaction included transition services agreements (the "TSAs") to allow for the the transition of liquor licenses and other permits to BSP for the IL Mulino restaurant locations in Miami, Florida, Roslyn, New York, and Atlantic City, New Jersey, which were operated by Debtors IM NY Florida, LLC, IM Long Island Restaurant Group, LLC, and IMNY AC, LLC (the "TSA Debtors"). (Dismissal Motion ¶ 33.)

---

[4] Capitalized terms in this paragraph have the meanings given in the asset purchase agreement filed at ECF Doc. # 396-2.

The termination of each of the TSAs will occur upon the earliest of (a) receipt by BSP of the licenses in accordance with applicable law, and (b) one year from the effective date of the TSAs, which occurred on February 2, 2021. (*Id.* ¶ 34.)

Applications for the transition of the licenses have been submitted to the applicable authorities and the expected timetable for completion of the transition of the licenses range from three months to one year depending on the jurisdiction. (*Id.* ¶ 35.) At the Hearing, Debtors' counsel represented that BSP received the liquor license for the restaurant in Miami, Florida. The Debtors therefore submit that the chapter 11 cases for only IM Long Island Restaurant Group, LLC, and IMNY AC, LLC, will need to remain open until the transition of the licenses are complete. (*See id.*)

### D.  The Debtors' Cash Balance

As of the filing of the Dismissal Motion on May 14, 2021, the Debtors' cash balance was $1,140,273.00. (Dismissal Motion ¶ 42.) By June 4, 2021, the cash balance had decreased to $940,273.00. (ECF Doc. # 485 at 4.) Debtors' counsel has agreed to discount its recovery on its allowed fees and expenses to the extent necessary for other administrative expense claims to be paid in full. (Dismissal Motion at 18 n.6.) After taking this discount into account, the Debtors estimate that allowed administrative claims will total the same amount as the Debtors' cash balance. (*Id.* ¶ 42.)

### E.  The Requested Dismissal

The Dismissal Motion seeks approval of, *inter alia*, the following procedures:

- A notice of the Dismissal Motion and the proposed dismissal procedures shall be provided to all creditors and equity security holders of the Debtors.

- The Debtors shall be authorized to pay allowed administrative claims and allowed professional fees, subject to Debtors' counsel's agreed reduction; provided that prior to payment of allowed administrative claims and allowed professional fees, the Debtors shall calculate, and reserve amounts necessary to satisfy any related U.S. Trustee fees.

5

- The Debtors shall be authorized to file a certification of counsel requesting dismissal of the chapter 11 cases of the Non-TSA Debtors, certifying that: (a) all Allowed Administrative Claims have been paid; (b) all Allowed Professional Fees have been paid; and (c) all U.S. Trustee fees have been paid and all monthly operating reports relating to the Non-TSA Debtors' chapter 11 cases shall have been filed.

- Certifications requesting dismissal shall only be served on the Master Service List approved pursuant to the Case Management Order (ECF Doc. # 113) entered in these chapter 11 cases (which includes the Office of the U.S. Trustee, counsel to BSP, and all other persons and entities that have formally appeared and requested service in these chapter 11 cases).

- The Debtors shall be authorized to file a certification requesting dismissal of any of the TSA Debtors' Chapter 11 Cases upon the termination of the TSA with respect to such TSA Debtor.

(Dismissal Motion ¶ 5.)

The Debtors also request that, notwithstanding section 349 of the Bankruptcy Code, all prior orders of the Court entered in the Debtors' chapter 11 cases remain in full force and effect and survive the dismissal of the chapter 11 cases. (ECF Doc. # 487-1 at 4 ¶ 2.)

Finally, the Debtors request the Court retain jurisdiction with respect to (i) any matters, claims, rights or disputes arising from or related to the implementation, interpretation, or enforcement of this or any other order of this Court entered in the chapter 11 cases; and (ii) the adversary proceeding captioned *BSP Agency LLC, et al., v. Katzoff et al.*, Adv. Pro. No. 21-01006 (the "BSP/Katzoff AP"). (*Id.* at 18 ¶ 6.)

## II.  LEGAL STANDARD

### A.  Dismissal Under Section 1112(b)

Section 1112(b)(1) provides, in relevant part:

> the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

6

11 U.S.C. § 1112(b)(1). "Cause" is defined in section 1112(b)(4), and includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A).

### B. Structured Dismissals

The Supreme Court examined the issue of structured dismissals in *Jevic*, describing the procedure as follows:

> Chapter 11 foresees three possible outcomes. The first is a bankruptcy-court-confirmed plan. Such a plan may keep the business operating but, at the same time, help creditors by providing for payments, perhaps over time. *See* §§1123, 1129, 1141. The second possible outcome is conversion of the case to a Chapter 7 proceeding for liquidation of the business and a distribution of its remaining assets. §§1112(a), (b), 726. That conversion in effect confesses an inability to find [sic] a plan. The third possible outcome is dismissal of the Chapter 11 case. §1112(b). A dismissal typically "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case"—in other words, it aims to return to the prepetition financial status quo. §349(b)(3).
>
> Nonetheless, recognizing that conditions may have changed in ways that make a perfect restoration of the status quo difficult or impossible, the Code permits the bankruptcy court, "for cause," to alter a Chapter 11 dismissal's ordinary restorative consequences. §349(b). A dismissal that does so (or which has other special conditions attached) is often referred to as a "structured dismissal," defined by the American Bankruptcy Institute as a
>
>> "hybrid dismissal and confirmation order . . . that . . . typically dismisses the case while, among other things, approving certain distributions to creditors, granting certain third-party releases, enjoining certain conduct by creditors, and not necessarily vacating orders or unwinding transactions undertaken during the case." American Bankruptcy Institute Commission To Study the Reform of Chapter 11, 2012-2014 Final Report and Recommendations 270 (2014) [hereinafter, the "ABI Report"].

137 S. Ct. at 979.

7

Whether a bankruptcy court has the authority to order a structured dismissal is the subject of some debate. *See* ABI Report at 269–73. In *Jevic*, the Supreme Court noted that, "[a]lthough the Code does not expressly mention structured dismissals, they 'appear to be increasingly common.'" 137 S. Ct. at 979 (quoting ABI Report at 270 n.973). While the Court explicitly declined to express a "view about the legality of structured dismissals in general," *id.* at 985, the Court limited the potential scope of structured dismissals, holding that a bankruptcy court cannot "approve a structured dismissal that provides for distributions that do not follow ordinary priority rules without the affected creditors' consent," *id.* at 983. The Court also noted that section 349(b) "appears designed to give courts the flexibility to 'make the appropriate orders to protect rights acquired in reliance on the bankruptcy case.'" *Id.* at 984 (quoting H. R. Rep. No. 95-595, p. 338 (1977)).

As noted by Collier's, the Supreme Court in *Jevic*

> did not entirely close the door on structured dismissals. The holding prohibits a dismissal permitting distributions contrary to the priority scheme without the affected creditors' consent. Therefore, if a dismissal provides for a distribution that does not violate the Code's priorities, or if the affected creditors consent to the distribution, a dismissal will not necessarily run afoul of the holding in *Jevic* if it otherwise complies with the applicable provisions of the Bankruptcy Code.

7 COLLIER ON BANKRUPTCY ¶ 1112.09.[5]

---

[5]   Collier's also argues that:

> This is consistent with the conclusions of the ABI Chapter 11 Commission Final Report, pp. 272–73 ("[T]he Commission agreed that a court should be permitted to confirm a plan under section 1129, convert a case under 1112, or dismiss a case provided that the requested dismissal and the dismissal order satisfy the applicable provisions of, and do not permit the parties to work around, the Bankruptcy Code.").

7 COLLIER ON BANKRUPTCY ¶ 1112.09. However, the ABI Report does not provide as much of an endorsement of structured dismissals as this statement may suggest; the ABI Report noted that the Commissioners' preferred approach was one that rendered structured dismissals unnecessary:

8

### C. Retention of Jurisdiction over Adversary Proceedings

In *Porges v. Gruntal & Co. (In re Porges)*, 44 F.3d 159 (2d Cir. 1995), the Second Circuit considered the bankruptcy court's retention of jurisdiction over a pending adversary proceeding pursuant to section 349 in its order of dismissal of the debtor's bankruptcy case. After considering "the question of first impression in this Circuit," the court decided "that related proceedings should ordinarily be dismissed following the termination of the underlying bankruptcy case," but that such termination is neither required nor automatic:

> We join several other circuits in adopting the general rule that related proceedings ordinarily should be dismissed following the termination of the underlying bankruptcy case. This general rule favors dismissal because a bankruptcy court's jurisdiction over such related proceedings depends on the proceedings' nexus to the underlying bankruptcy case. Notwithstanding this general rule, however, nothing in the Bankruptcy Code requires a bankruptcy court to dismiss related proceedings automatically following the termination of the underlying case. Indeed, section 349 of the Bankruptcy Code authorizes bankruptcy courts to alter the normal effects of the dismissal of a bankruptcy case if cause is shown. Accordingly, we hold that the dismissal of an underlying bankruptcy case does not automatically strip a federal court of jurisdiction over an adversary proceeding which was related to the bankruptcy case at the time of its commencement. The decision whether to retain jurisdiction should be left to the sound discretion of the bankruptcy court or the district court, depending on where the adversary proceeding is pending.

---

> As the Commissioners started to carve out problematic provisions from an "acceptable" structured dismissal, they recognized that it likely was an unworkable solution. They bolstered this conclusion by reviewing the recommended principles for section 363x sales. Under these recommended principles, a sale of all or substantially all of a debtor's assets will incorporate appropriate creditor protections from the confirmation process. If these protections are implemented, the court may approve the sale, and its order may include (i) a release or discharge to affect claims protection for the purchaser and (ii) certain specified distributions to priority creditors. The Commissioners believed that the recommended principles for section 363x sales should render the use of structured dismissals unnecessary.

ABI Report at 272.

9

*Porges*, 44 F.3d at 162; *see also Boyce v. Citibank, N.A. (In re Boyce)*, 710 F. App'x 44, 47 (2d Cir. 2018) (applying *Porges*).

The *Porges* court also held that "a court must consider four factors in determining whether to continue to exercise jurisdiction: judicial economy, convenience to the parties, fairness and comity." *Id.* at 163. However, the Second Circuit clarified in a later opinion that "[i]n *Porges*, this Court never said that the bankruptcy court must make explicit findings," and that a court is not "stripped of jurisdiction over an ongoing adversarial action simply because it failed to make explicit findings with respect to the *Porges* factors when dismissing the underlying bankruptcy case." *Jam. Shipping Co. v. Orient Shipping Rotterdam, B.V. (In re Millenium Seacarriers, Inc.)*, 458 F.3d 92, 96 (2d Cir. 2006).

### III.  DISCUSSION

It is clear that dismissal is warranted here. The Debtors have sold substantially all of their assets, have no further operations, and have insufficient resources to fund a plan. The other alternatives under section 1112(b)(1)—conversion to chapter 7 or appointment of a trustee or examiner—would impose costs that would only further erode the value of the already administratively insolvent estates with no apparent benefit, and are therefore not "in the best interests of creditors and the estate[s]." 11 U.S.C. § 1112(b)(1).

In addition, the U.S. Trustee does not object to the retention of jurisdiction over the BSP/Katzoff AP in the event the chapter 11 cases are dismissed. However, even if the U.S. Trustee did object on this basis, the retention of jurisdiction is also clearly warranted based on the *Porges* factors identified in Section II.C. above—particularly judicial economy, convenience to the parties, and fairness. The BSP/Katzoff AP is scheduled for trial on June 28-29, 2021.

The controversy is whether dismissal is warranted *at this stage*, whether the Court's approval of the distribution scheme is necessary and permissible, and whether certain orders should survive the dismissal. Each of the U.S. Trustee's objections is discussed below.

### A.  Whether Dismissal Is Premature

The U.S. Trustee argues that

> These cases are not ready to close until certain licensing and other issues relating to the sale of the Debtors' assets must be completed before all the cases can be closed. . . .
>
> The Debtors' proposal for a two-step dismissal process, whereby the Court will first enter an order authorizing the dismissal of the Non-TSA Debtors, which also approves various distributions, resolution of claims and other necessary steps to prepare the cases for dismissal, and then dismiss the TSA Debtors upon a resolution of the transfer of certain liquor licenses, is untenable.
>
> If the Debtors seek to dismiss these cases, they should so move only after the Debtors have completed the wind-down of their estate, which includes any time needed to transfer the liquor licenses.

(Objection at 9–10.)

The U.S. Trustee's argument is not convincing. Although these cases are jointly administered, the Debtors are separate entities with separate cases and separate estates. While the U.S. Trustee is correct that the TSA Debtors' cases should not be dismissed until the liquor licenses have been transferred, that is precisely the Debtors' intent. The Debtors do not seek *dismissal* at this time, and simply seek approval of an orderly *process* for the dismissal of these cases, which logically must be approved in advance of the contemplated dismissals. The U.S. Trustee has not identified any concrete reason that the proposed two-step process should not be approved, or why the Non-TSA Debtors' cases should not be dismissed before the TSA Debtors' cases are dismissed.

11

Accordingly, the Court **OVERRULES** the U.S. Trustee's objection that the request for approval of the process is premature.

However, it is not clear from the Revised Proposed Orders whether parties-in-interest will be able to object when the applicable certification requesting closure of the TSA Debtors' cases is filed. Much can occur between now and when those certifications are filed, and the Court therefore **ORDERS** that the Debtors revise their proposed orders to include a provision that any party-in-interest may file an objection to the closing of a case for which a certification has been filed up to seven days after such certification has been filed, after which the Court may schedule a hearing or close the case without any further notice or hearing.

### B.  The Distribution Scheme

In the Objection, the U.S. Trustee does not challenge that the distribution scheme contemplated by the Debtors complies with the priority scheme of the Code, but argues only that the contemplated distribution does not need Court approval. (*See id.* at 2 ("[T]he Dismissal Motion improperly requests this Court to issue what amounts to a comfort order with respect to the payment of administrative claims. The payment of administrative claims is governed by provisions of the Bankruptcy Code and the Debtors need no specific unusual order of this Court in order to pay administrative claims."); *id.* at 12 (noting that "whether there is compliance with sections 507(a) and 726 does not end the inquiry" into whether the distribution scheme can be approved, but implicitly acknowledging that the distribution scheme complies with the Code).)

Although the U.S. Trustee may be correct that the distribution scheme does not require Court approval, this does not mean that the Court cannot (or even should not) approve the distribution scheme. While perhaps not required, approval would provide certainty to the Debtors and the creditors, and promote the orderly winding up of the estates, which is precisely the purpose of the contemplated structured dismissal.

12

Accordingly, the Court **OVERRULES** the U.S. Trustee's objection that the distribution scheme does not require Court approval.[6]

### C. Survival of Orders

The Debtors' proposed order provides:

> Notwithstanding section 349 of the Bankruptcy Code, all prior Orders of this Court entered in the Chapter 11 Cases shall remain in full force and effect and shall survive the dismissal of the Chapter 11 Cases, shall continue in full force and effect and the Court retains jurisdiction to enforce the same.

(ECF Doc. # 487-1 at 4 ¶ 2.)

The U.S. Trustee notes that the Sale Order, which would survive dismissal as a result of the above provision, includes an exculpation of BSP from claims in connection with the sale. (Objection at 14.) The Sale Order provides:

> 34. **Exculpation of Buyer**. Effective upon the Closing, and to the maximum extent available under applicable Law, neither the Buyer nor any of its members, partners, employees, Affiliates, successors, assigns, advisors, or representatives shall have or incur any Liability to, or be subject to any action by, the Debtors, their estates, or any of their predecessors, successors or assigns, including any trustee or examiner appointed in these cases or upon a conversion of these cases to chapter 7 of the Bankruptcy Code, any official committee of unsecured creditors, other fiduciaries that are or may be appointed in these cases, or any Persons or entities, arising from, based on, or related in any way to the negotiation, documentation, or due diligence in respect of, or the performance or consummation of the Asset Purchase Agreement and any related agreements entered into in connection therewith, the Debtors, their estates, and the conduct of their business prior to the Closing, and the entry into and consummation of the Sale Transaction, other than (with respect to the Buyer only) the Buyer's obligations under this Order or the

---

[6] The Revised Proposed Orders include a provision that requires the Debtors to return to BSP the $100,000 that was paid by BSP to the Debtors and reserved for distribution to holders of allowed general unsecured claims under the sale agreement. (ECF Doc. # 487-1 at 4 ¶ 3.) At the Hearing, the U.S. Trustee objected to this provision, but agreed that, under *Jevic*, the Court could not approve a distribution to general unsecured creditors where, as here, the Debtors are administratively insolvent (a fact that was acknowledged by the U.S. Trustee), as such a distribution would violate the absolute priority rule. Accordingly, the objection to the return of the $100,000 to BSP is **OVERRULED**.

13

> Asset Purchase Agreement or any related agreements entered into in connection with the Sale Transaction; provided that, to the extent that a claim or cause of action by the Debtors, their estates, or any of their predecessors, successors, or assigns is determined by order of this Court or any court of competent jurisdiction to have resulted from fraud, gross negligence, or willful misconduct of the Buyer, such claim or cause of action shall not be released against the Buyer.

(Sale Order ¶ 34.)[7]

The U.S. Trustee does not explain why it had not objected to this exculpation provision at the time of the sale (a fact acknowledged by the U.S. Trustee at the Hearing), but finds the provision objectionable now. At the Hearing, the U.S. Trustee explained that it does not seek to have the Court unwind the sale; it noted its position that the sale would survive dismissal without any further order of the Court.

As noted in Section II.B. above, the Supreme Court stated in *Jevic* that section 349(b) "appears designed to give courts the flexibility to 'make the appropriate orders to protect rights acquired in reliance on the bankruptcy case.'" 137 S. Ct. at 984 (quoting H.R. Rep. No. 95-595 at 338).[8] The exculpation of BSP was almost certainly acquired in reliance that the Sale Order (including the exculpation) would survive the bankruptcy case, regardless of how the case

---

[7] Notably, the Sale Order also provides:

> 36. For the avoidance of doubt, Paragraphs 34 and 35 of this Order do not exculpate or release the Buyer with respect to any direct or personal prepetition claims or defenses that a Person may have independent of any claims or causes of action of the Debtors and the Debtors' estates (including derivative claims).

(*Id.* ¶ 36.)

[8] The legislative history indicates that this may be particularly true for asset sales, as the intent "to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case . . . does not necessarily encompass undoing sales of property from the estate to a good faith purchaser." H.R. Rep. No. 95-595 at 338.

BSP also points to section 363(m) as "underscor[ing] the bankruptcy policy and market importance of the continued efficacy of this Court's . . . Sale Order." (BSP Reply at 7.) While section 363(m) "applies only to an appeal from an order authorizing a sale, not generally to any later challenge to such an order," 3 COLLIER ON BANKRUPTCY ¶ 363.11, it embodies a "strong policy of finality of bankruptcy sales," *In re Edwards*, 962 F.2d 641, 645 (7th Cir. 1992). Vacating the Sale Order at this stage (either in whole or in part) would be directly contrary to that policy of finality.

14

concluded. Therefore, the exculpation appears to be precisely the kind of right that should be protected through section 349(b), and should not be defeated by an objection that could have been (but was not) brought before the exculpation was originally granted.[9]

Finally, the contention that an order providing for survival of the Sale Order (either in whole or in part) constitutes an unnecessary "comfort order" is unavailing. As discussed above with respect to approval of the distribution scheme, even if such an order is not required, approval would eliminate many unnecessary ambiguities. "Comfort orders" can be appropriate in many circumstances, including this one.

Accordingly, the Court **OVERRULES** the U.S. Trustee's objection with respect to the survival of the exculpation of BSP.

## IV. CONCLUSION

For the reasons stated above, the Court **OVERRULES** the Objection and **GRANTS** the Dismissal Motion. The Court **ORDERS** that the Debtors file a revised proposed order that provides for a seven-day period for a party-in-interest to file an objection for the dismissal of the TSA Debtors' cases after the applicable certification has been filed.

**IT IS SO ORDERED.**

Dated:   June 9, 2021
         New York, New York

                                              *Martin Glenn*
                                              MARTIN GLENN
                                              United States Bankruptcy Judge

---

[9] The Court also notes the position of BSP and the Debtors that section 349 only operates to vacate orders granted under certain provisions of the Code, none of which are applicable here. The Court declines to rule on whether section 349 is so limited. To the extent that section 349 applies to vacate any order in these chapter 11 cases, the Court finds that the protection of parties' reasonable reliance interests constitutes sufficient cause for those orders to survive dismissal. (The U.S. Trustee offers no support for its contention that an evidentiary record must be established with respect to each order to justify survival under section 349 (Objection at 19), and the Court **OVERRULES** that objection.)